# Samuel R. Jackson et al., Exrs., Appts., *v.* Charles K. Miller et al.

Equity will not, at the instance of a landlord, restrain by injunction, before rent has become due, the sale and removal of distrainable goods from the demised premises.

Even the clandestine or fraudulent removal of goods by the tenant, before the rent is due, gives no right to the landlord to follow them after it becomes due, and distrain within thirty days from the time of their removal.

The act of March 21, 1772, is the same in substance as the statute Geo. II., chap. 19, § 1; and its application is confined to a removal of goods after the rent is actually in arrears.

(Decided May 2, 1887.)

January Term, 1887, No. 397, E. D. Appeal from a decree of the Common Pleas of Montgomery County dismissing a bill in equity. Affirmed.

This was a bill filed by Thomas Jackson against Charles K. Miller and Andrew Ervin. The plaintiff died pending the suit; and his executors, Samuel R. Jackson and William Jackson, were substituted as plaintiffs.

The cause was set down for hearing on bill and answer.

Upon entering a decree dismissing the bill, BOYER, P. J., delivered the following opinion:

The complainant in this case filed his bill in equity praying for a special injunction in the first instance, and a final injunction afterwards, to prevent the defendant from removing from the premises leased by plaintiff to the defendant, Miller, the personal property of the latter, then upon the demised premises, alleging that Miller had made a collusive and fraudulent transfer

NOTE.—Similar rulings under the act of March 21, 1772, were made in Grace v. Shively, 12 Serg. & R. 217; Sargent v. Matchett, 20 W. N. C. 96; Conway v. Lowry, 7 W. N. C. 64. By the act of March 25, 1825 (P. L. 114) provision was made for Philadelphia by which goods could be seized within thirty days after removal, though no rent was at the time in arrears, where such was done with the intent to defraud the landlord, except in case the goods have passed into the hands of a bona fide purchaser. This legislation was subsequently extended to Pittsburgh and Allegheny. Act March 29, 1870 (P. L. 669).

of the goods to the defendant, Ervin, who had advertised them to be sold on the premises on the 19th day of November following, with intent to defraud the plaintiff of the rent accruing, which, however, would not be due until the first day of April ensuing, amounting to $650. The bill also prayed for an injunction to enjoin the defendant Miller to cut certain timber, and put up fifty panels of fence.

The defendants deny the material allegations of the bill, except the lease and the amount of rent, and the date and removal of the goods from off the premises.

The apprehensions of the plaintiff were naturally aroused by information of the transfer of the distrainable property upon the leased premises by Miller to Ervin, and its advertisement for sale. The transfer was made to Ervin, who was the creditor of Miller, under an agreement that Ervin should advertise and sell the goods, pay his own claim against Miller out of the proceeds, together with the expenses of sale, and account to Miller for the balance.

At the hearing of the rule to show cause why a special injunction should not issue, the special injunction was refused; the defendant, Miller, however, agreed that the balance, if any, of the proceeds of the sale of the goods by Ervin, remaining above the amount of Ervin's claim, should be paid to the plaintiff on account of the rent falling due at the expiration of the lease; but afterwards, when Ervin had sold enough to cover his claim, Miller forbade the sale from proceeding any further. Ervin then stopped the sale, and left the unsold goods upon the premises. Of this fact Ervin notified the plaintiff. Ervin therefore had nothing in hand to pay plaintiff out of the proceeds of the sale; and the plaintiff could not distrain upon the goods because his rent was not yet due.

Afterwards Miller himself removed from the farm on the 21st of February, 1885, more than a month before the end of the lease. Previously to his removal he had sold and removed the whole of the remaining articles and, as he swears, delivered them to certain preferred creditors, to whom he was honestly indebted and whom he felt bound to protect in preference to his landlord.

The case was set down for argument by the plaintiff upon bill and answers filed.

The plaintiff, as the case is presented, was wholly without

remedy, by injunction, to restrain the defendants from removing the goods from the leased premises, as admitted by them in their answers that they did. His rent, when he filed his bill, lacked four months of being due, and it was therefore not in his power to distrain for it. Nor had the court jurisdiction to detain the goods upon the premises until the plaintiff was in a condition to distrain—not even upon well-founded suspicion, or even the certainty of the contemplated nonpayment of the accruing rent by the tenant. The act of March 21, 1772, is the law upon which we must rely. It provides that if a tenant fraudulently or clandestinely removes his goods from the demised premises, with intent to prevent a distraint, the landlord, within thirty days after the goods are removed, can take and seize such goods wherever the same may be found, as a distress for arrears of rent; provided, however, that the goods have not been sold bona fide and for a valuable consideration before such seizure. But it will be observed that if the goods are removed thirty days before the rent falls due the act does not apply; and it leaves the tenant free to sell and deliver the goods for a consideration at any time before the rent is payable.

Such is the general law of the state; and in Grace v. Shively, 12 Serg. & R. 217, it was decided by the supreme court that even the clandestine or fraudulent removal of goods by the tenant before the rent is due gives no right to the landlord to follow them after it becomes due, and distrain within thirty days from the time of their removal. Our act of assembly is the same in substance as the English statute of George II. chap. 19, § 1, under which it is held by the English authorities that its application is confined to a removal after the rent is actually in arrear. See also Jackson & G. Land. & T. §§ 175, 322.

The goods in question, therefore, having been sold and removed from the demised premises several months before the rent fell due, the tenant had a right to do so even to the injury of the landlord.

In Philadelphia, Pittsburgh, and Allegheny there is a local law (see Purdon's Digest, new ed. p. 1013) that if goods are fraudulently removed from demised premises with intent to defraud the landlord of his distress, the landlord can have his rent apportioned to the time of such removal, and follow and take the goods as a distress within thirty days from such removal; provided the landlord makes oath or affirmation that he

verily believes the goods were carried away for the purpose of defrauding him; coupled with this, however, is the proviso that goods sold bona fide, and for a valuable consideration are excepted. If this law were applicable to Montgomery county, the plaintiff would have been in a situation to test the questions raised by his bill. But under the general law he was without remedy.

Nor do I think the plaintiff's case is helped by the agreement the defendant made upon the hearing of the application for a special injunction to the effect that the balance, if any, realized by the contemplated sale of the goods by Ervin remaining in his hands after payment of his own claim and expenses should go towards the payment of the rent. This agreement was not made in consideration of the withholding of the special injunction prayed for by the plaintiff; for it was plain that no such injunction could have been lawfully issued under the circumstances. It was at most a naked promise induced by persuasion; and that was nothing to prevent the defendant Miller from stopping the sale when Ervin's claim was satisfied. He had in nowise bound himself not to do so, although it doubtless disappointed the reasonable hope of the plaintiff; for the result was that no funds came into the hands of Ervin payable upon the rent. The plaintiff had, however, lost no advantage by the nonfulfilment of his expectation; he was simply as helpless as before.

The unsold goods were afterwards left for a time upon the premises, and the plaintiff was notified by Ervin of the fact. But the plaintiff was powerless to distrain, because his rent was not yet due. So the situation continued until the tenant, more than thirty days before the rent became payable, sold, and removed the remainder of the goods.

Whether, under the facts as disclosed in this case, the law adequately protects the landlord, is not the question for consideration, but whether the defendants have kept within the limits of the law in the exercise of their acts complained of. If by their answers they have successfully repelled the charges of the bill, the plaintiff is concluded. Upon this ground the plaintiff's bill must be dismissed.

The assignments of error specified the action of the court in dismissing the bill.

*G. R. Fox & Son,* for appellants.—The sale to Ervin was a fraud, as by the bargain he was to sell everything, his claim was to be paid, and the residue of the money given to Miller. It was a clear breach of trust.

The relation of landlord and tenant is a confidential one. The tenant is a trustee for the landlord. Matthews's Appeal, 104 Pa. 452; Kirkpatrick v. M'Donald, 11 Pa. 387.

Ervin knew that if the goods were all sold, and Miller got the money, the landlord would get nothing, and was not only a party to the intended fraud, but, by the agreement entered of record, became a trustee of the property for the landlord.

An abuse of a trust can confer no rights on the party abusing it, nor on those who claim in privity with him. 2 Story, Eq. § 1258.

The doctrine extends to all persons standing in a fiduciary relation to the party, whatever that relation may be. Id. § 1261.

Another class of constructive frauds consists of those where a person purchases the legal or equitable title of other persons to the same property. In such cases he will not be permitted to protect himself against such claims, but his own title will be postponed and made subservient to theirs. 1 Story, Eq. § 395.

The taking of a legal estate, after notice of a prior right, makes a person a *mala fide* purchaser; not that he is not a purchaser for a valuable consideration in every other respect. This is a species of fraud, and *dolus malus* itself. Id. § 397.

A bare trustee will not be suffered to defeat the trust by an act of collusion. Pratt v. Lewis, 4 Whart. 22.

No act of a trustee, without the assent of the *cestui que trust,* can operate to destroy the interest of the latter. Hatz's Appeal, 40 Pa. 209.

The only thing to be inquired of in a court of equity, in cases of this sort, is whether the property bound by the trust has come into the hands of persons who were either compellable to execute the trust, or to preserve the property for the persons entitled to it. 2 Story, Eq. § 257.

Whenever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, it will be held, in its new form, liable to the rights of the original owner, etc. Id. § 1258.

It is the policy of every civilized people to protect creditors

from covinous agreements and assignments of debtors; and this not because creditors are a peculiarly meritorious class, but because credit and confidence are indispensable to the advancement, if not the very existence, of society; and the growth of these will always be proportioned to the vigilance with which the laws guard the obligations of good faith. Hershey v. Weiting, 50 Pa. 245.

Fraud properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and injurious to another, or by which an undue and unconscientious advantage is taken of another. 2 Story, Eq. § 187.

No man shall be permitted to allege his own fraud, or avoid his own deed. Truth and fair dealing are rules of universal obligation. Courts of justice will not help parties to consummate frauds. When the defendant has given plaintiff a perfect cause of action, by an instrument unimpeachable in itself, courts are bound to sustain it. Evans v. Dravo, 24 Pa. 66, 62 Am. Dec. 359.

A trust will be enforced not only against those who are rightfully possessed of the fund as trustees, but against all others who have obtained it without consideration with notice of the trust. Harrisburg Bank v. Tyler, 3 Watts & S. 373.

*H. K. Weand,* for appellees.—It is difficult to see wherein Mr. Ervin did wrong when he attended plaintiff's public sale, and bought and paid for the goods sold. It is not denied that Miller owed him a large amount, and he had the right by law to pay this debt by assigning the property. It was a fair and bona fide transaction, without any attempt at concealment.

There was no trust in the case. The spirit of the agreement was carried out by Ervin. Jackson complained that the tenant's goods were about being sold and removed. He certainly could not have compelled a sale. He therefore wanted the goods or the money, and Ervin and Miller left him the goods as he demanded by his bill. No matter what his complaint may be against Miller, he certainly has none against Ervin, who in the whole transaction was simply trying to get his money, and he got no more.

PER CURIAM:

The facts stated and the authorities cited in the opinion of

the learned judge on dismissing the bill fully vindicate his con-clusion; and on that opinion,

Decree affirmed and appeal dismissed, at the costs of the appellant.